UNITED STATES of America, Appellee,

v.

Timothy John O'MEARA, Appellant.

UNITED STATES of America, Appellee,

v.

David Anthony KOST, Appellant.

Nos. 89–5010, 89–5028.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1989.

Decided Feb. 12, 1990.

John W. Lundquist, Minneapolis, Minn., for appellant Timothy John O'Meara.

Alan D. Margoles, St. Paul, Minn., for appellant David Anthony Kost.

Richard E. Vosepka, Minneapolis, Minn., for U.S.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

David Anthony Kost and Timothy John O'Meara were convicted in a jury trial of conspiring to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Both O'Meara and Kost challenge their convictions and the district court's [1] sentences. We affirm.

## I.

Based upon information he had received that Kost was involved in distributing cocaine, Hennepin County Deputy Sheriff Jeffrey Burchett, an undercover drug agent, contacted Kost on March 2, 1988, and attempted to purchase five kilograms of cocaine from him. Kost and Burchett did not reach a final agreement on the sale. On March 31, 1988, Kost asked Burchett if he could buy two ounces of cocaine from him. By April 4, Kost had increased his desired purchase to six ounces of cocaine, agreeing to pay $1,000 per ounce.

Kost and Burchett agreed to meet in Minneapolis on April 5, 1988, to complete the sale. O'Meara accompanied Kost to Minneapolis. Kost and Burchett met alone in Burchett's automobile in a parking lot while O'Meara waited in another car. Other undercover agents were stationed nearby. Burchett wore a body transmitter that enabled the other agents to record the conversation via radio link. Before the sale took place, Burchett told Kost that he had eight ounces of cocaine that he preferred not to break up. Burchett agreed to "front" the additional two ounces to Kost, meaning that Kost could take the additional two ounces of cocaine without paying for it immediately. Kost paid Burchett $1,000 and told him that O'Meara would pay the remaining $5,000. Burchett testified that Kost planned to tell O'Meara that the cocaine was $1,250 an ounce, instead of $1,000 an ounce, so that O'Meara would get four ounces for $5,000 and Kost would make a profit from the sale to O'Meara.

Kost summoned O'Meara to Burchett's car to deliver the money. (The recording

1. The Honorable Edward J. Devitt, United States District Judge for the District of Minnesota.

tape ran out at this point, but the other agents were able to hear the conversation with O'Meara via the radio transmitter.) Burchett said that he wanted to see the money before he handed over the cocaine. O'Meara gave Burchett $5,000. In return, Burchett handed O'Meara a zip-lock bag containing approximately eight ounces of cocaine. O'Meara tasted the cocaine, pronounced it to be of good quality, and passed the bag to Kost. Burchett then asked O'Meara what cocaine sold for in the Detroit Lakes, Minnesota, area where O'Meara lived. O'Meara responded that cocaine sold for about $2,000 an ounce when "cut one quarter," meaning when diluted by 25 percent. On signal from Burchett, the other agents then moved in and arrested Kost and O'Meara.

The district court denied O'Meara's motions to sever his trial from Kost's. O'Meara objected throughout the trial to testimony concerning Kost's negotiations to purchase cocaine from sources in Arizona for Burchett. The district court also denied O'Meara's request to instruct the jury on conspiracy to possess cocaine as a lesser included offense.

Kost testified regarding his negotiations with Burchett and his intent to keep some of the cocaine and to sell the remainder. Kost also testified that O'Meara had no knowledge of the drug transaction, claiming that O'Meara had accompanied Kost to the April 5 meeting with Burchett because Kost had asked for O'Meara's assistance in repaying a gambling debt.

Before sentencing, Kost continued to claim to a probation officer that O'Meara knew nothing about the drug transaction. O'Meara admitted to the probation officer, however, that he was knowingly involved in orchestrating the drug purchase.

The district court sentenced O'Meara under the Federal Sentencing Guidelines (Guidelines) to 33 months' imprisonment, followed by three years' supervised release. The court based its sentence on a total offense level of 16, calculated by taking into account O'Meara's criminal history score, the eight ounces of cocaine involved in the transaction, a two-point reduction for acceptance of responsibility, and another two-point reduction for O'Meara's minor role in the transaction. The court sentenced Kost to 57 months' imprisonment, based on a total offense level of 24, arrived at from a base offense level of 20, plus a two-point upward adjustment for acting as an organizer and leader in the crime and a two point upward adjustment for obstructing justice.

## II.

Kost challenges his conviction on the ground that O'Meara's conviction is invalid. If O'Meara's conviction cannot stand, asserts Kost, neither can his own conspiracy conviction since O'Meara was his only conspirator.

■ O'Meara raises a number of challenges to his conviction, including the district court's refusal to grant his motions to sever his trial from Kost's. He alleges that the district court admitted hearsay evidence of statements Kost made in negotiations with Burchett prior to the April 5, 1988, meeting which are not admissible as the declarations of a co-conspirator under Fed.R.Evid. 801(d)(2)(E) and which the district court admitted without following the procedures set forth in *United States v. Bell*, 573 F.2d 1040 (8th Cir.1978). O'Meara asserts that there is no evidence to suggest that O'Meara and Kost were engaged in a conspiracy except for the day O'Meara accompanied Kost to Minneapolis to close the deal with Burchett. Thus, Kost's statements made when negotiating with Burchett were inadmissible under the co-conspirator exception because Kost did not make the statements in the course of and in furtherance of a conspiracy. O'Meara contends that he suffered prejudice as a result of these erroneous rulings.

Persons charged with a conspiracy will generally be tried together, especially where proof of the charges against each of the defendants is based on the same evidence and acts. *United States v. Voss*, 787 F.2d 393, 401 (8th Cir.), *cert. denied*, 479 U.S. 888, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986); *United States v. Singer*, 732 F.2d

631 (8th Cir.1984). We will not disturb a district court's denial of a severance motion in the absence of a showing that the court abused its discretion, causing clear prejudice to a defendant's right to a fair trial, *Singer*, 732 F.2d at 634, or, as stated in *Voss*, 787 F.2d at 401, "real" prejudice (a term we consider synonymous with "clear"). The denial of a severance motion results in clear prejudice when the defendant is deprived of an appreciable chance that he would not have been convicted in a separate trial, and not merely when he would have had a better chance for acquittal in a separate trial. *Singer*, 732 F.2d at 635. Disparity in the evidence introduced against each of the defendants, or allegations that evidence which incriminated a co-defendant had a "spillover" prejudicial effect against the defendant, are insufficient grounds for severance unless the district court in its discretion determines that the defendant has demonstrated the jury's inability to "compartmentalize" the evidence against the separate defendants. *Id.; United States v. Andrade*, 788 F.2d 521, 530 (8th Cir.), *cert. denied*, 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 408 (1986); *United States v. Milham*, 590 F.2d 717, 722 (8th Cir.1979). Moreover, we will not reverse for failure to follow the procedures established in *Bell* absent a showing of prejudice. *United States v. Mason*, 869 F.2d 414, 416 (8th Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989); *see also United States v. Cerone*, 830 F.2d 938, 952 (8th Cir.1987), *cert. denied*, 486 U.S. 1006, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988).

We see no prejudice to O'Meara from the district court's rulings. The evidence concerning Kost's negotiations with Arizona cocaine suppliers did not mention O'Meara at any point. The prosecution acknowledged before the jury that the evidence of Kost's preliminary negotiations with Burchett related only to Kost. Although the district court denied O'Meara's initial request for an instruction, the court later instructed the jury that any reference to the Arizona transaction "should not be considered as against the other defendant, Mr. O'Meara, but only as against Mr. Kost,"

when it became clear that there was no connection between the Arizona transaction and O'Meara. The court so instructed the jury again immediately before its deliberations.

We see no difficulty that the jury might have had in compartmentalizing this evidence in light of the court's clear instructions and the absence of any involvement by O'Meara or reference to him in the negotiations. A jury is capable of compartmentalizing evidence in a case such as this where the trial took only three days, did not involve complex issues, and involved only two defendants and only one count against each. *See United States v. Davis*, 882 F.2d 1334, 1340 (8th Cir.), *petition for cert. filed*, 1989 WL 163316 (1989); *United States v. O'Connell*, 841 F.2d 1408, 1432 (8th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). As the government argues, if anything the joint trial should have been beneficial to O'Meara. Had the jury believed Kost's testimony, it would have exonerated O'Meara.

■ O'Meara also challenges his conviction on the ground that the district court erred by refusing to instruct the jury on conspiracy to possess cocaine as a lesser included offense of conspiracy to possess with intent to distribute. A "defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973). A trial court should give lesser included offense instructions when, among other factors, there is evidence that would support conviction of the lesser offense and the proof on the element or elements differentiating the two crimes is sufficiently disputed so that the jury could consistently acquit on the greater offense and convict on the lesser. *United States v. Roy*, 843 F.2d 305, 310 (8th Cir.), *cert. denied*, 487 U.S. 1222, 108 S.Ct. 2881, 101 L.Ed.2d 916 (1988).

O'Meara's defense at trial was that he was unaware of the drug transaction. The

material evidence of O'Meara's involvement was testimony concerning the conversation in the car the day of the transaction, when O'Meara discussed in detail how he would sell cocaine. There was no evidence offered indicating that O'Meara's involvement in the purchase plan was for the sake of his personal use. Therefore, the district court did not err in concluding that O'Meara was not entitled to a lesser included offense instruction.

We have carefully considered O'Meara's contention that the evidence was insufficient to support his conviction, as well as his contention that his statements to Burchett in the car should not have been admitted because the agents failed to record the entire conversation, and find that these contentions are without merit. Therefore, we uphold O'Meara's conviction and, consequently, Kost's conviction as well.

### III.

Both Kost and O'Meara challenge the propriety of their sentences. Kost raises a number of objections to the district court's application of the Guidelines, including the upward adjustment in his offense level for acting as an organizer or leader, the upward adjustment for obstructing justice, and the district court's refusal to lower his offense level for acceptance of responsibility.

When reviewing sentences imposed by the district court, we accept the court's findings of fact unless clearly erroneous and give due deference to the court's application of the Guidelines. 18 U.S.C. § 3742(e).

The district court noted that with an upward adjustment for a role as an organizer or leader, Kost fell within a sentencing range of 57 to 71 months. Without the upward adjustment, Kost would fall within a sentencing range of 46 to 57 months. The district court sentenced Kost to 57 months, finding further consideration of whether Kost acted as an organizer or leader unnecessary. Because Kost's sentence fell within a range subject to the court's discretion, we agree that the issue is moot.

■ As for the obstruction of justice adjustment, Kost claims that the district court unfairly concluded that he had lied during trial and to the probation officer when he claimed that O'Meara was unaware of the cocaine transaction on April 5. Kost contends that a sentencing court cannot justly put a defendant in the position of choosing between either telling a different story after conviction in the hopes of lenity at sentencing or admitting perjury.

The crux of the issue here, however, lies in O'Meara's confession to the probation officer of his knowing involvement in the cocaine deal. The district court did not base its conclusion on Kost's conviction but on O'Meara's confession. The validity of the district court's reasoning is supported by our recent decision in *United States v. Wagner*, 884 F.2d 1090 (8th Cir.1989), in which we held that an upward adjustment for obstruction of justice could be based on the district court's determination that the defendant lied at trial because the testimony of law enforcement officers contradicted the defendant's testimony. *Id.* at 1098. We therefore find that the district court justifiably increased Kost's sentence for obstructing justice.

Because Application Note 4 of the commentary to section 3E1.1 of the Guidelines precludes a downward adjustment for acceptance of responsibility when a defendant obstructs justice, we do not further consider Kost's position that he was entitled to a reduction.

■ Finally, both O'Meara and Kost contend that the district court should have sentenced them on the basis of six ounces of cocaine instead of eight ounces. Kost claims that it was fundamentally unfair and a usurpation of the judicial function for police officers to increase, in effect, a defendant's sentence in an undercover police operation by fronting drugs. The record shows, however, that the negotiations leading to Kost's acceptance of the additional two ounces did not materially differ from the negotiations preceding the April 5th meeting in which Burchett agreed to sell Kost six ounces of cocaine. Burchett first

mentioned the additional two ounces in the following part of the April 5th meeting with Kost:

> Burchett: "I got eight here. If I gotta break it up, I'll break it, but you guys got—have anymore case with you at all or what?"
>
> Kost: "No I don't."
>
> Burchett: "When's the next time you're coming down."
>
> Kost: "Oh God, let me think. For a thousand an ounce. All you need is another two grand."
>
> Burchett: "Yep. Really you know this is the best stuff the guy has given me in six months. The other stuff—"
>
> Kost: "If it's that good, if you want to front it to me, I can handle it in a week."
>
> Burchett: "A week? Two grand?"
>
> Kost: "Yep."

This exchange shows that Burchett simply let Kost know that more cocaine was available. The conversation also reveals that Kost was receptive to the possibility of acquiring another two ounces. Thus, this part of the transaction is not legally distinguishable from the rest of the undercover police operation. Accordingly, the district court did not err in sentencing Kost on the basis of the full eight ounces.

O'Meara asserts that he should not have been sentenced for eight ounces of cocaine because Kost agreed to purchase the additional two ounces without O'Meara's knowledge. O'Meara points to the distinction between the law governing convictions for conspiracy, which allows a jury to convict a defendant, shown to belong to a conspiracy, for "substantive crimes committed by coconspirators in furtherance of the conspiracy, even though the defendant did not participate in the substantive offense," *United States v. Garcia*, 785 F.2d 214, 225 (8th Cir.), *cert.*

*denied*, 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986), and the rules for sentencing. O'Meara cites Application Note 1 to section 2D1.4 of the Guidelines, which at the time he was sentenced read:

> If the defendant is convicted of a conspiracy, the sentence should be imposed only on the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable.[2]

The language of this comment is an indication that the Guidelines intend to depart to some extent from the common law rule holding conspirators responsible for actions of co-conspirators of which they are unaware. The evidence in O'Meara's case, however, shows that he willingly accepted the eight ounce bag of cocaine when Deputy Burchett offered it for inspection. O'Meara did not question its weight or verify that he and Kost were purchasing only six ounces. O'Meara has not persuaded us that it was unforeseeable that Kost, as his co-conspirator, would accept an additional two ounces if offered to him. On these facts, we find that the district court's decision to sentence O'Meara on the basis of eight ounces of cocaine is not clearly erroneous.

Accordingly, we affirm the judgments and sentences of the district court in all respects.

BRIGHT, Senior Circuit Judge, concurring in part, dissenting in part.

This case opens the window on the sometimes bizarre and topsy-turvy world of sentencing under the Guidelines. The defendants in this case were convicted of the same crime by the same jury in front of the same judge. They conspired to obtain the same amount of drugs[1] from the same

---

**2.** Application Note 1 was amended effective November 1, 1989.

**1.** The record in this case shows that Kost and O'Meara conspired to obtain four ounces of cocaine apiece. I cannot agree with the majority, however, that O'Meara's offense level should have been computed based on the full eight-ounce amount. When the Government seeks an

enhanced penalty under 21 U.S.C. §§ 841(a)(1), 846 (1982), it bears the burden of proving drug quantity. *United States v. Gordon*, 876 F.2d 1121, 1126 (5th Cir.1989). Further, O'Meara remained accountable for Kost's conduct only to the extent that it was reasonably foreseeable and furthered jointly agreed to criminal activity. *See United States v. Warters*, 885 F.2d 1266,

DEA agent in the same county. They gave the same story to police upon arrest, used the same defense at trial and admitted the same relevant conduct to the same probation officer following conviction. Yet, in this case, the computed Guidelines sentencing range for Kost (57–71 months) was more than double that for O'Meara (27–33 months).

This result belies both common sense and reality. With respect to role in the offense, O'Meara was the far more experienced offender.[2] He supplied over eighty percent of the cash for the transaction and the Government considered him to have played an equally culpable part.

Furthermore, with regard to the enhancement for obstructing justice, O'Meara was a willing beneficiary of Kost's allegedly false trial testimony and, prior to conviction, had maintained the "gambling debt" version throughout the proceedings. In addition, under the Guidelines' obstruction provision, Kost's suspect testimony should have been evaluated "in the light most favorable" to him. See U.S.S.G. 3C1.-1, comment. (n. 2). This requirement, which parallels the standard for judgments of acquittal, cf. United States v. Rodriguez, 812 F.2d 414, 416 (8th Cir.1987), suggests that no obstruction enhancement

should have been imposed if a reasonable trier of fact could have found Kost's statements true. Under such a standard, the fact the jury in this case rejected Kost's testimony is insufficient to sustain the enhancement if another jury could have reasonably believed it.[3]

Moreover, although both defendants admitted responsibility for their relevant offense conduct, under the probation officer's application, the Guidelines permitted only O'Meara to receive the downward adjustment. This result was inequitable and absurd under the facts of this case. Kost admitted responsibility for his offense conduct both at trial and during the presentence investigation while O'Meara denied his culpability until the final hour. In addition, during pre-trial negotiations, O'Meara refused to accept a plea bargain that Kost had been willing to take.[4]

Whether the disparity in this case rests upon some inadvertent preference for personalities or because a more sophisticated offender successfully manipulated the system to his advantage, the end result is no less unsettling. Guideline sentencing "by the numbers" was supposed to eliminate such improper influences. As this case demonstrates, however, the Sentencing

1272–73 (5th Cir.1989); U.S.S.G. § 1B1.3, comment. (n. 1) (incorporated by reference into U.S.S.G. § 2D1.4, comment. (n. 1)).

In this case, the Government produced no reliable evidence, see United States v. Gooden, 892 F.2d 725, 727–28 (8th Cir.1989), that O'Meara could have reasonably foreseen Kost's self-initiated negotiations for eight ounces of cocaine—much less a preponderance of the evidence as many courts now require, see, e.g., United States v. Silverman, 889 F.2d 1531, 1535 (6th Cir.1989); United States v. Harris, 882 F.2d 902, 906–07 (4th Cir.1989); United States v. Landry, 709 F.Supp. 908, 912–13 (D.Minn.1989). In fact, the only evidence on this point (i.e., Kost's instructions to the undercover agent as to O'Meara's payment for the previously agreed to six-ounce amount) suggests that O'Meara remained totally in the dark. As a consequence, sentencing O'Meara based on the eight-ounce figure violated the minimum requirements of due process under any standard. Cf. McMillan v. Pennsylvania, 477 U.S. 79, 91–93, 106 S.Ct. 2411, 2418–20, 91 L.Ed.2d 67 (1986) (preponderance of evidence standard satisfies due process at sentencing).

2. O'Meara's presentence report noted eight previous infractions, including three drug offenses and a juvenile conviction for sexual assault. By contrast, Kost's prior record consisted of an expunged drug possession charge and a $50 fine for a bad check.

3. Accordingly, I am somewhat disturbed by the probation officer's seemingly uncritical acceptance of O'Meara's belated "confession." Although the gambling story could well have been concocted to purely deceive authorities in the event of arrest, there was also reason to suspect O'Meara's recanting during the final hour. O'Meara had steadfastly adhered to the "gambling debt" version prior to that occasion, and his substantial prior contacts with the criminal justice system likely made him sophisticated enough to recognize the potential benefit of telling authority figures what they wanted to hear.

4. The Government's offer during plea negotiations was conditioned on the joint acceptance of both defendants; therefore, Kost was unable to accept it without O'Meara's concurrent acceptance.

Guidelines do not reduce disparity and in my judgment have failed in that regard.

The essential lie of the Sentencing Guidelines is that, by establishing "neutral criteria" which vastly restrict the district judge's discretionary powers, they will eliminate disparity in sentencing. In reality, the present guideline system merely replaces one system of subjective sentencing with another. Indeed, the Guidelines are an intricate and complex code of sentencing and, as such, require extensive construction. Needless to say, this construction is not conducted by computers—much less by gods. Instead, the implementation of the present guideline system is highly dependent on the judgment calls of fallible human actors, who are no less susceptible to errors in judgment and differences in interpretation than their pre-Guidelines predecessors. Hence, where sentencing judges once applied their legal knowledge and life experiences to the facts of a given case, we now call on them to evaluate the defendant's circumstances according to the dictates of a complex and cumbersome code.

Guideline sentencing is perhaps most disturbing, however, not because it continues to require subjective decision-making, but because these still-subjective determinations are in large part no longer conducted by the federal judiciary. Rather, due to the difficulty of mastering this complicated and ever-evolving guideline system, it seems to me that district courts have come increasingly to rely on the recommendations of the probation officer who prepares the presentence report. Consequently, it is a sad but true fact of life under the Guidelines that many of the crucial judgment calls in sentencing are now made, not by the court, but by probation officers to whose technical knowledge overworked district judges understandably, but all too often, uncritically defer. I cannot help but feel that we have lost something in this substitution of technical proficiency for the thoughtful exercise of discretion by the federal judiciary.

Accordingly, I would remand this case to the district judge with instructions to re-duce Kost's sentence using some common sense and an eye for consistency and just results. I would also ask the district judge to consider whether O'Meara's sentence should be further reduced in accordance with my comments in footnote number one.