UNITED STATES of America, Appellee,

v.

Steve MILLER, Appellant.

No. 90–2365EM.

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1991.

Decided July 25, 1991.

---

Jason Daniel Ponfil, St. Louis, Mo., for appellant.

Steven E. Holtshouser, St. Louis, Mo., for appellee.

Before McMILLIAN and MAGILL, Circuit Judges, and WOODS,* District Judge.

---

* The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

MAGILL, Circuit Judge.

Steve Miller appeals his conviction for possession with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988); and conspiracy to possess with intent to distribute more than 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1). Miller claims that the district court[1] erred in overruling his *Batson* objection and in refusing to give his requested instructions on the lesser included offenses. We affirm.

## I.

In October 1988, Miller agreed to accompany Shawn Johnson, a high school buddy, on a trip to St. Louis, Missouri. When Miller and Johnson arrived in St. Louis on October 31, 1988, they checked into room 204 at the Thrifty Inn Hotel. The room was booked in Miller's name, and Miller had possession of the room key while Miller and Johnson were in St. Louis. Kevin Dixon, a friend of Johnson's, was staying at the Thrifty Inn in room 212.

On that same day, the St. Louis Metropolitan Police Department received a tip that several individuals were selling cocaine out of rooms 204 and 212 at the Thrifty Inn Hotel. The police began surveilling the rooms at Thrifty Inn that evening. During the approximately ninety-minute surveillance, the police observed between six and seven separate visitors arrive at room 212. After each arrival, Dixon would leave room 212 and go to room 204 where he would stay for a moment and then he would return to room 212. Shortly after Dixon's return, each visitor would leave room 212. According to one of the detectives watching the hotel, this pattern of foot traffic was consistent with selling drugs out of a hotel room and corroborated the information the police department had received from their informant.

The police continued their surveillance the next night, November 1, starting at 10:00 p.m. Again, they observed approxi-

---

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

mately seven separate visitors enter room 212. After each visitor arrived, the police observed the same pattern as the night before. That same evening, the police observed Miller standing on the balcony outside room 204. On November 2, the police obtained search warrants for rooms 204 and 212. Shortly before these warrants were executed, Miller and Johnson left the hotel. The police then detained Dixon and Seth Fischer, the occupants of room 212, as they were leaving the hotel area. The police then searched both rooms. Under one of the beds in room 204, the police found eighteen plastic baggies, each containing approximately one ounce of cocaine, and a zip-lock bag containing approximately two ounces of cocaine. Along with the drugs, the police found a wallet containing numerous pieces of identification belonging to Miller and approximately $1,550 in cash. While no drugs were found in room 212, the police did find approximately one ounce of cocaine on Dixon when he was arrested.

According to Miller, he and Johnson left the hotel to visit a friend of Johnson's, and when they returned to the hotel, they saw the police and hopped onto a plane back to California. A year and a half later, Miller was stopped in California for speeding and subsequently extradited to St. Louis.

Miller was indicted on November 23, 1988, and charged with possession with intent to distribute cocaine and conspiracy to possess with intent to distribute cocaine. Miller's trial began on May 14, 1990, with the jury voir dire.

The jury venire consisted of twenty-nine persons, including ten African–Americans. Initially, the government used its six peremptory strikes to remove Ms. Brown, Mr. Burkley, Ms. Johnson, Ms. Smith, Ms. Witherspoon, and Ms. Tobler from the venire panel. All six of these individuals were African–Americans. Miller made a *Batson* objection,[2] and the district court found that a prima facie case for a *Batson* violation had been established. This cre-

ated a presumption that the government's conduct was motivated by racial discrimination. Based on this *Batson* objection, Miller requested that the government be required to strike six new people from the jury venire.

The district court then instructed the government to articulate a neutral explanation for its strikes. The government responded that Ms. Brown had been stricken because of her employment with Legal Services of Eastern Missouri, a provider of civil legal services to indigents. The prosecutor explained that Ms. Brown's exposure to "that legal field and that legal environment" motivated him to strike her. The prosecutor explained that he requested to strike Mr. Burkley because he had professional ties with the law firm that represented Miller. The prosecutor stated that Ms. Johnson was stricken because she was employed by Kingshighway properties, a business that the prosecutor believed had ties with narcotics traffickers.[3] While the prosecutor did not believe that Ms. Johnson had been involved in any illegal activities, he stated that her possible association with and exposure to narcotics traffickers motivated the strike. The prosecutor then explained that the remaining three jurors were stricken because of their association with the education field. The prosecutor stated that, based upon his experience, "teachers tend to be more forgiving of individuals and more sympathetic and would not make a good juror. [sic]" Tr. at 94. The prosecutor stated that based upon his review of the venire panel, only one other person on the venire panel was associated with the education field and that person was also an African–American. Upon closer review, the district court established that the prosecutor was incorrect and that another venire person, Mr. Schluchter, a Caucasian, was also a teacher.[4] The district court accepted the prosecutor's explanations as reasonable and race-neutral, and ruled that there was no *Batson* violation. The district court did require the

---

**2.** In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that the government violates the equal protection clause when it engages in racial discrimination during jury selection. *Id.* at 87, 106 S.Ct. at 1718.

**3.** The prosecutor based this belief upon independent narcotics investigations.

**4.** The confusion apparently arose over Mr. Schluchter's description of his position as a "reading specialist."

prosecutor to give up his strike of one of the African–American educators [5] and use it against Mr. Schluchter. The final jury included four African–Americans with one African–American alternate.

At trial, the government's evidence included: photographs of the items that were found underneath the bed in room 204; the packets of cocaine found in room 204; the wallet containing Miller's identification that was found with cocaine under the bed in room 204; and the testimony of police officers involved in the investigation and the general manager of the Thrifty Inn. Miller and his wife testified on Miller's behalf. Miller argued that he did not know that drugs were going to be involved in the trip to St. Louis. He claims that he was to act as Johnson's bodyguard while Johnson transported cash from St. Louis to California. Furthermore, he testified that after he and Johnson checked into the hotel, they met Dixon, who was staying in room 212, and that he went into room 204 while Johnson went with Dixon into room 212. Miller then testified that Johnson returned to room 204 with two papers bags that contained approximately twenty ounces of cocaine, and that Johnson then put the bag that contained the cocaine under one of the beds in room 204. Miller testified that Dixon repeatedly came to room 204 to purchase cocaine from Johnson but that each time Johnson refused to sell Dixon anything.[6] Miller also testified that he had never used drugs and that he did not know that Johnson was involved with drugs in any way.

After both sides presented their evidence, the district court held a conference on the jury instructions. Miller requested that the court issue a lesser included offense instruction on both charges, specifically asking for an instruction on simple possession and conspiracy to possess.[7] The government objected to the simple posses-

sion instruction, arguing that a jury could not rationally conclude that Miller was guilty of simple possession but innocent of possession with intent to distribute, because there was no evidence that Miller personally used cocaine. The district court agreed with the government and refused to offer both lesser included offense instructions.

The jury convicted Miller on both charges, and the district court sentenced him to sixty-eight months' imprisonment, to be followed by four years of supervised release.

## II.

Miller makes two arguments on appeal. First, he claims that the district court incorrectly found that the government's use of its peremptory strikes did not violate *Batson*. Second, he claims that the district court erred when it refused to give the jury the lesser included offense instructions. The government argues that the district court properly overruled Miller's *Batson* objection because the government gave legitimate, race-neutral explanations for its peremptory strikes. On the lesser included offense claim, the government argues that the district court properly refused to give Miller's requested instruction because Miller's defense was purely exculpatory and because a jury could not rationally have found Miller guilty of the lesser included offense of simple possession while at the same time finding him innocent of the charged offense of possession with intent to distribute.

### A. *Batson* Issue

▪ Miller claims that the government's explanation of its peremptory strikes did

---

5. This venire person, Ms. Witherspoon, had previously worked as a substitute teacher for the St. Louis Board of Education, but at the time of the trial, she was not employed in the education field. Ms. Witherspoon was the only one of the three African–American venire persons struck by the government who was not currently active in the education field.

6. On direct examination, Miller's attorney asked:

Q: Shawn [Johnson] told him [Dixon] he wasn't going to sell him any drugs. Why should Shawn tell him that?
A: He said that he didn't have none to sell to him, that he had for somebody else.
Tr. at 199.

7. The offenses in the requested lesser included offense instructions lacked the element of intent to distribute and carried a lighter penalty than possession with intent to distribute.

not rebut the presumption of prejudice found by the district court. Each reason the government offered involved the occupation of the stricken venire persons. The government bore the burden of proving that its strikes were made for legitimate, race-neutral reasons. After hearing the government's reasons, the district court overruled Miller's *Batson* objection, finding that the government had met its burden. We grant great deference to the district court's finding and review it under a clearly erroneous standard. *See Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21 ("Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference."); *United States v. Matha*, 915 F.2d 1220, 1221, 1222 (8th Cir.1990).

After reviewing the record, we find no error in the district court's decision. Consequently, we conclude that the district court properly rejected Miller's *Batson* claim.

### B. Lesser Included Offense Claim

Miller also argues that the district court improperly refused to give a lesser included offense instruction for both charges. This court has held that a defendant is entitled to a lesser included offense charge if:

> (1) a proper request is made; (2) the elements of the lesser offense are identical to some of the elements of the greater offense; (3) there is some evidence which would justify conviction of the lesser offense; (4) proof on the element or elements differentiating the two crimes is sufficiently in dispute so the jury may consistently find the defendant innocent of the greater and guilty of the lesser-included offense; and (5) there is mutuality (a charge may be demanded by either prosecution or defense).

*Arcoren v. United States*, 929 F.2d 1235, 1243–44 (8th Cir.1991) (quoting *United States v. Eagle Hawk*, 815 F.2d 1213, 1215 (8th Cir.1987)). There is no question that Miller has satisfied parts (1), (2), and (5);

the question in this case revolves around parts (3) and (4).

In *United States v. O'Meara*, 895 F.2d 1216 (8th Cir.1990), we addressed the issue presented here and held that a district court need not offer a lesser included offense instruction when the jury could not rationally find the defendant guilty of the lesser offense and innocent of the greater. *O'Meara*, 895 F.2d at 1219. The defendant in *O'Meara* was charged with conspiracy to possess cocaine with the intent to distribute it. The government offered evidence of a conversation in which the defendant discussed in detail how he would sell the cocaine. The defendant's defense at trial was that he was unaware of the drug transaction. After all the evidence was presented, the defendant requested a lesser included offense instruction on conspiracy to possess cocaine. The district court denied this request, and the defendant appealed. This court held that the defendant was not entitled to a lesser included offense instruction on conspiracy to possess cocaine because there was no evidence offered that indicated that the defendant sought to possess the cocaine for personal use, and because the defendant's defense was ignorance of the transaction, a completely exculpatory defense. *Id.* at 1219–20; *cf. United States v. Pena*, 930 F.2d 1486, 1493 (10th Cir.1991) (district court properly refused lesser included offense instruction on simple possession when defendant claimed she did not knowingly possess marijuana for any purpose, and no evidence was offered that would have supported inference that defendant possessed the marijuana for personal use). Similarly, Miller claims to have been ignorant of Johnson's plan to purchase and/or sell cocaine in St. Louis. He also stated that he did not use cocaine. Therefore, applying the reasoning in *O'Meara*, Miller was not entitled to a lesser included offense because there was no evidence offered indicating that the cocaine was intended for personal use. If the jury believed Miller's story, it would have had to

acquit him of all charges. *Cf. Arcoren,* 929 F.2d at 1244 (defendant not entitled to lesser included offense instruction when there is no basis upon which a jury could rationally acquit a defendant of charged offenses, but convict her of lesser included offenses). In light of all the evidence presented to the jury, we see no rational basis upon which a jury could have concluded that Miller possessed the cocaine without the intent to distribute it. Consequently, we find no error in the district court's refusal to give Miller's lesser included offense instructions.

### III.

For the foregoing reasons, Miller's convictions are affirmed.