124 F.3d 204
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Winston McINTYRE, Petitioner-Appellant,
v.
Jerry D. GILMORE, Respondent-Appellee.
 No. 96-2258.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 25, 1997.*
Decided July 31, 1997.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 94 C 6454; John F. Grady, Judge.
 Before POSNER, Chief Judge and EASTERBROOK and MAMON, Circuit Judges.
 
 ORDER
 
 1
 Winston McIntyre contends that the state violated his right to equal protection in his trial for murder and other offenses by using its peremptory challenges in a racially discriminatory manner, see Batson v. Kentucky, 476 U.S. 79 (1986). The trial court and Illinois Appellate Court rejected this claim, People v. Hemphill, 594 N.E.2d 1279, 1288 (Ill.App.1992), and so did the district court in denying his habeas corpus petition pursuant to 28 U.S.C. § 2254. We affirm.
 
 
 2
 Before McIntyre's jury selection began, each side was allotted fourteen peremptory challenges. After the state had used eight of twelve peremptories to exclude black venirepersons, McIntyre raised for the second time a Batson objection. At the trial court's behest, the state gave race-neutral reasons for the eight strikes. The court tentatively overruled the objection, concluding that "at this time ... there isn't enough showing [of discrimination], although it's getting close, let's go back and see what we can do." The state then attempted to strike Angela Sims, an African-American, on the ground that she was a teacher. This was the state's third strike directed against a teacher. The court refused to excuse Sims: "No, she will remain, the Court will say otherwise teachers have become persona non grata, if I ever saw a solid projecting wom[a]n, this is the wom[a]n, you don't know what she's thinking." At the same time, the court allowed the state to remove a ninth black venireperson because she was young.
 
 
 3
 After conviction, McIntyre moved for a new trial on the Batson ground. He relied heavily on the trial court's refusal to remove Sims, arguing that "there's no basis to deny the State a right to use their peremptory other than Batson, and our position is that the proper remedy ... was either to let the State use their peremptory challenge on that person or to grant a mistrial." The trial judge disagreed and explained that McIntyre's inference "that I thought that the State had improperly excused others ... is not the proper conclusion to draw."
 
 
 4
 "A prosecutor may not exercise his peremptory challenges to strike a venireperson on the basis of his race." United States v. Sowa, 34 F.3d 447, 452 (7th Cir.1994). We follow a three-step process in evaluating a Batson challenge: (1) the movant must establish a prima facie case; (2) the nonmovant must then articulate race-neutral reasons for the strikes; and (3) the court determines whether the movant has carried his burden of proving purposeful discrimination. Id. We will focus on the third step because where, as here, "a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a prima facie showing becomes moot." Hernandez v. New York, 500 U.S. 352, 359 (1991). McIntyre concedes that the prosecutor's reasons were facially race-neutral, but argues that several were untruthful and thus pretext for intentional discrimination.
 
 
 5
 All told, the state exercised nine of its fourteen peremptory challenges to exclude blacks. Four African-Americans, including Sims, served on McIntyre's jury. While acknowledging that it unsuccessfully attempted to strike Sims, the state notes that one African-American was impaneled while it still had eleven peremptory challenges remaining. The record is silent as to the racial composition of the original jury venire. The state courts' findings of fact regarding credibility and discriminatory intent are entitled to substantial deference, see id. at 364-69; 28 U.S.C. § 2254(d) (1995) (recodified at § 2254(e)(1));[1] Splunge v. Clark, 960 F.2d 705, 708 (7th Cir.1992).
 
 
 6
 McIntyre now focuses on the removal of just three venirepersons: Jeanette Thomas, Carol Johnson, and Joyce Johnigan. There is no question that the first two of these strikes were adequately explained. The state's reasons were that Thomas had been unemployed for five years, and that Johnson was currently unemployed. Unemployment is a valid race-neutral reason for a peremptory strike, see United States v. Hunter, 86 F.3d 679, 683 (7th Cir.), cert. denied, 117 S.Ct. 443 (1996); United States v. Ferguson, 935 F.2d 862, 865 (7th Cir.1991). McIntyre asserts that Thomas was employed, ignoring her statement that she had been unemployed for five years in the past. He further complains that the state allowed Concetta Green, who was white, to serve on the jury although she too was "unemployed." The state counters that Green was a homemaker who lived with her husband in retirement, and thus was not similarly situated. The state also points out it struck three venirepersons who were unemployed and not African-American. It does not appear that anyone who was or had been unemployed in the conventional sense served on the jury. Under these circumstances, neither of these strikes suggests pretext.
 
 
 7
 The Johnigan strike poses a slightly more difficult question because she, like Sims, was challenged on the sole ground that she was a teacher. This is a race-neutral justification, see United States v. Davis, 40 F.3d 1069, 1077 (10th Cir.1994); United States v. Miller, 939 F.2d 605, 607-09 (8th Cir.1991). The state notes that it again acted consistently, also striking Brenda Weiss, a white schoolteacher. Moreover, it is far from clear that the trial court held that the Sims challenge was discriminatory. The court's ruling appears to have been based on its objection to the systematic exclusion of teachers and its belief that Sims would be a good juror. It doesn't matter whether this was a misinterpretation of the court's power under Illinois law; the point here is that the court's reasons do not suggest a finding of racial discrimination. Assuming arguendo that the strike was improperly motivated, there was no injury because Sims served on the jury and the court was emphatic at the posttrial hearing that it had not concluded that the state's other challenges were discriminatory. That one strike was inadequately justified does not automatically impugn the remaining successful strikes, see, e.g., United States v. James, 113 F.3d 721, 728-30 (7th Cir.1997). Finally, the Illinois Appellate Court concurred with the trial court that "there was no purposeful discrimination." Hemphill, 594 N.E.2d at 1288. McIntyre has failed to meet his burden to overcome the deference owed the state courts' determination.
 
 
 8
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [1]
 The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214, amended and recodified the former § 2254(d) as § 2254(e)(1). Because McIntyre's petition was filed before the effective date of the Act, we apply the standards of the unamended law to his noncapital case, Lindh v. Murphy, No, 96-6298, 1997 WL 338568 (U.S. June 23, 1997)