Tyrone **SWANSON,** Appellant,

v.

**UNITED STATES,** Appellee.

No. 89–624.

District of Columbia Court of Appeals.

Argued Jan. 14, 1992.
Decided Feb. 7, 1992.

Michael H. Stone, Washington, D.C., appointed by this court, for appellant.

Henry K. Kopel, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Thomas C. Black, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY and SCHWELB, Associate Judges.

ROGERS, Chief Judge:

Appellant Tyrone Swanson appeals his conviction of second-degree murder while armed, D.C.Code §§ 22–2403, –3202 (1989 Repl.), two counts of assault with a dangerous weapon, *id.* § 22–502 (1989 Repl.), carrying a pistol without a license, *id.* § 22–3204 (1989 Repl.), and obstruction of justice, *id.* § 22–722(a)(1) (1989 Repl.),[1] on the ground of instructional error. He contends that the trial judge improperly instructed the jury on (1) exculpating and mitigating factors with respect to second-degree murder and manslaughter, (2) malice, (3) self-defense, and (4) the state of mind for voluntary manslaughter. All except his last claim are meritless; as to the last claim we find no plain error. Accordingly, we affirm.

---

1. The jury acquitted appellant of one count of procuring, D.C.Code § 22–2707.

# I

Appellant arrived in the Washington area from Cleveland, Ohio, in February 1987, along with Jeri Burton and two other women, to practice his trade as a pimp. On the evening of February 21, 1987, Burton began soliciting sex for money in Washington, D.C. At approximately 2:00 a.m. on February 22, 1987, Samuel Lee Evans asked Burton for a "date" and she eventually agreed to provide a few minutes for $50. As the couple started walking down the street, Burton secretly indicated to appellant that he should follow them. When Evans led her down an alley, Burton became scared. As she began to leave, Evans choked her and dragged her back into the alley. To defend herself, Burton tried stabbing Evans with a knife but Evans grabbed her hand and forced Burton to stab herself in the head.

In response to Burton's scream for help, appellant came into the alley, pulled out a gun, pointed it at Evans and jerked his hand in an apparent, unsuccessful attempt to shoot Evans. Evans ran out of the alley, with appellant chasing him. The men stopped in front of the Governor's House Holiday Inn on Rhode Island Avenue, where Evans yelled, "[G]et a police [sic]; let me in; this man [is] crazy."

Burton, catching up with the two men outside the Holiday Inn, told appellant not to kill Evans, just beat him up instead. When Burton turned to Evans and said "I will kill you before you kill us," appellant turned around and began hitting Evans with his fists. He then went down the street and returned with a wooden board and began beating Evans with it. At some point, appellant backed away from Evans and pulled a gun; Burton told appellant not to kill the man, and appellant ordered Burton to hide the gun in the bushes. Then appellant told Burton to retrieve the gun, put it in his pocket, and go back to the car. After Burton complied, appellant resumed beating Evans with the board. As Burton walked toward the car, she heard a gunshot.

A Holiday Inn security guard saw an "older man" swing a knife at a "younger man," in order to keep the younger man away at the time the older man was shot.[2] Then, just before he heard a gunshot, the guard heard the older man say "he got a gun, he got a gun [sic]." A passer-by in a car testified that as the older man stood up, the younger man put his hand in his jacket, and after his hand came out the old man fell; the witness heard a gunshot at the time the older man fell. Furthermore, another security guard, at the Gramercy Hotel located directly across the street from the Holiday Inn, saw the younger man, after looking in both directions in an apparent attempt to determine whether anyone was watching, shoot the older man with a gun after first beating him with a board outside the Holiday Inn. In all, six witnesses saw an older man being beaten by a younger man with a board outside the Holiday Inn; five testified that the man being hit sought only to shield himself with his hands and never displayed any weapon or attacked the man who was beating him.[3]

In his defense, appellant called one witness who testified about a previous incident in which Evans had forced her and her friend at knifepoint into an abandoned home and raped her while her friend stood by crying.

# II

██ Appellant contends that the trial judge made numerous errors in instructing

---

**2.** The security guard, as with all other witnesses except Burton, could not identify appellant in court. The witnesses merely referred to "a younger man" beating up an "older man." Burton testified that Evans appeared to be in his forties, and the record reflects that appellant was twenty nine.

**3.** Appellant was apprehended almost a year later in Cleveland, Ohio. He made several partial-ly incriminating statements to the police in Cleveland, and also later to a man named Maurice Stoney–Bey. He also made four threats to Burton while she was in Cleveland to prevent her from being located by the government and testifying against him. Two witnesses corroborated Burton's testimony about appellant's threats; a police officer offered circumstantial evidence of them.

the jury. His contention that the judge failed to define "justification or excuse," "adequate provocation," and "heat of passion in response to adequate provocation" in instructing the jury on mitigating circumstances is raised for the first time on appeal, and we find no plain error.[4] *Watts v. United States,* 362 A.2d 706, 709 (D.C. 1976) (en banc). Declining defense counsel's request to supplement the standard instructions on second-degree murder and voluntary manslaughter while armed with instructions about the government's burden of disproving self-defense and defense of another person, the trial judge gave the standard instruction on murder in the second-degree, and thereafter gave the self-defense instruction separately from the substantive homicide instructions.[5] The trial judge did not abuse his discretion in choosing this method of instruction, which was "within the range of permissible alternatives."[6] *Bush v. United States,* 516 A.2d 186, 195 (D.C.1986) (quoting *Johnson v. United States,* 398 A.2d 354, 365 (D.C. 1979)). Over the government's objection, the judge instructed the jury on the defense theory of the case, self-defense and defense of another, in connection with second-degree murder while armed, manslaughter while armed, assault with a dangerous weapon and simple assault.[7] Hence, mitigating circumstances were not left undefined.

■ Likewise, appellant's contention that the judge's instruction on "express or implied malice" constituted reversible error, because the instructions tended to confuse the jurors, thereby preventing them from "understand[ing] that malice rests, in part, on the presence of three different states of mind," is meritless. The judge denied defense counsel's only request, that the judge delete from the standard instruction on second-degree murder the sentence on express malice, on the ground that the jury might rely on the procuring offense as a predicate for inferring express malice.[8]

---

4. *Comber v. United States,* 584 A.2d 26, 41 (D.C. 1990) (en banc) (While "mitigating factors do not constitute a total defense to a murder charge[,]" "[s]uch circumstances may ... serve to reduc[e] the degree of criminality of a homicide otherwise committed with an intent to kill, an intent to injure, or in conscious and wanton disregard of life.") (citation and internal quotes omitted).

5. The trial judge instructed the jury that:
 Justifiable homicide would be the necessary killing of another in the promise of a legal duty or where the person who kills not being himself [or herself] at fault [had] a legal right to kill.
 Excusable homicide occurs where the person who kills, although himself at fault, had the legal right so to kill or where the killing was the accidental result of a lawful act done in a lawful manner.
 CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.23 (3rd ed.1978).
 The judge denied defense counsel's request that "terror and fear" be excluded from the instruction regarding "the heat of passion caused by adequate provocation," on the ground that fear is an element of self-defense. The judge explained that the concept of fear applies separately and distinctly to both self-defense and heat of passion.

6. Appellant's vague reference to the trial judge's use of the phrase "adequate provocation" in defining voluntary manslaughter fails to specify the nature of any error by the trial judge. Furthermore, his general assertions (again without reference to the nature of the judge's error), reflecting expressions of preference stated in dictum by this court sitting en banc in *Comber, supra* note 4, do not provide grounds for reversal. We include in the category of general assertions appellant's statements that the jury "should be instructed that if the government fails to disprove the mitigating influence of imperfect self-defense but proves all other elements of second-degree murder, the verdict should be voluntary manslaughter," and that the jury "must be explicitly instructed that if it rejects the theory that self-defense fully exonerates the defendant's actions, it should consider whether evidence of imperfect self-defense constitutes a mitigating factor which the government must prove beyond a reasonable doubt to establish malice."

7. The judge also gave instruction No. 5.14 A, B, and C regarding permissible force for self-defense, over government objection. The judge ultimately granted defense counsel's request to substitute "excitement" for "heat of passion" in Section C, and denied requests for an additional paragraph in Instruction 5.17 regarding self-defense where the defendant might have been the aggressor.

8. At trial, defense counsel objected to the instruction on "express and implied malice" on the ground that the instruction to the effect that "one [who] unlawfully kills another in pursuance of a wrongful act or unlawful purpose" would cause the jury to impermissibly use the

On appeal, he maintains that the judge failed to instruct clearly on the three states of mind required for malice. Hence, we review for plain error. *Watts, supra,* 362 A.2d at 709.

 At common law, murder constituted an unjustified or unexcused homicide committed with "malice aforethought." *Comber, supra* note 4, 584 A.2d at 38. The court has recognized that "malice aforethought" is merely a technical phrase that "denotes four types of murder, each accompanied by distinct mental states." *Id.* (citing *Byrd v. United States,* 500 A.2d 1376, 1385 (D.C.1985), *adopted en banc, Byrd v. United States,* 510 A.2d 1035, 1037 (D.C.1986)). These four types of murder cover individuals who, in causing another's death, specifically intended to kill, intended to cause serious bodily harm, acted with a "wanton and willful disregard of an unreasonable human risk" (i.e., depraved heart murder), or killed during the intentional commission of a felony. *Id.* at 38–39.

 Contrary to appellant's contentions, we conclude that the trial judge did not abuse his discretion, *see Bush, supra,* 516 A.2d at 195, in part because the instructions to the jury described the three states of mind which might constitute malice.[9] The instruction clearly indicated that malice implies a state of mind which may include a specific intent to kill, an intent to commit serious bodily harm, or an intent to act in a manner "regardless of the life and

safety of others" (depraved heart murder). While the en banc court has expressed, more than one year after appellant's trial, a preference for listing the three mental states instead of providing the standard redbook instruction, *Comber, supra* note 4, 584 A.2d at 42 n. 18, the trial judge had no *sua sponte* duty to adopt such a form of instruction in appellant's earlier-tried case. In view of the instructions given, we find no basis to conclude that plain error occurred.[10] The judge conveyed the idea that malice can be mitigated by an unreasonable reaction to a fear of imminent danger or violence in his instructions on heat of passion caused by adequate provocation. *See Bush, supra,* 516 A.2d at 194. ("[defendant] is not entitled to dictate the wording of [the] instruction" (quoting *Fludd v. United States,* 336 A.2d 539, 541 n. 3 (D.C. 1975))). Moreover, the evidence of appellant's malice was very strong. *See Watts, supra,* 362 A.2d at 709, 712 (no manifest injustice).

 Appellant's contention that reversible error occurred because the trial judge "fail[ed] to give the self-defense instruction immediately after the instructions on second-degree murder" is ·meritless. While lengthy jury instructions may tend to lessen complete comprehension and repetition can serve to emphasize a point, we see no basis here for appellant's view that the effect was ·to "nullif[y] the impact of that instruction on the jury's consideration of the charge of second-degree murder."[11]

procuring offense as the wrongful act or unlawful purpose. *See Powell v. United States,* 485 A.2d 596, 601–05 (D.C.1984) (nature of wrongful act required for express malice) (Rogers, J., dissenting). Appellant does not renew this claim on appeal, presumably because he was acquitted of procuring. *See Southeastern Express Co. v. Robertson,* 264 U.S. 541, 542, 44 S.Ct. 424, 424, 68 L.Ed. 840 (1924).

9. The trial judge instructed the jury that:
 Malice means a state of mind that shows a heart regardless of the life and safety of others.
 It may also be defined as the condition of mind which prompts a person to do willfully, ... without adequate provocation, justification or excuse, a wrongful act whose foreseeable consequence is death or serious bodily injury to another.
Criminal Jury Instructions for the District of Columbia, *supra* note 5, No. 4.23.

10. The record reveals no jury confusion; the notes from the jury did not address the issue of malice.

11. The court has expressed a preference for having the jury reinstructed on self-defense when it is reinstructed on the substantive offense. *Coreas v. United States,* 565 A.2d 594, 599 (D.C.1989); *Davis v. United States,* 510 A.2d 1051, 1053 (D.C.1986) (and cases cited). The issue in *Coreas* and *Davis* was whether there was an abuse of discretion in reinstructing the jury on a substantive offense without also reinstructing the jury on self-defense. *Coreas, supra* note 11, 565 A.2d at 599 ("[w]e reemphasize ... that when the trial court gives supplemental jury instructions it should seek not only to respond to the jury's request ... but it should do so in a manner that does not unduly emphasize one aspect of the case [by instructing only on

Although the trial judge instructed the jury on self-defense after instructing on all the substantive offenses, nothing in the record suggests that this would have affected the jury's consideration of the second-degree murder charge, or any other charge. The trial judge expressly informed the jury that the claim of self-defense would apply to "[s]econd degree murder while armed; manslaughter while armed; assault with a dangerous weapon, board; assault with a dangerous weapon, pistol and simple assault." Since the jury is "presumed to follow instructions," unless the record indicates otherwise, *German v. United States,* 525 A.2d 596, 609 (D.C.), *cert. denied,* 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987); *Hairston v. United States,* 497 A.2d 1097, 1103 (D.C.1987), and the record does not indicate the jury did not, we find no error in the trial judge's decision not to instruct the jury on self-defense after each substantive offense, including second-degree murder, where the judge specifically identified the offenses to which self-defense is relevant.

 Finally, appellant contends that reversible error occurred when the judge failed to instruct the jury that the state of mind element of the lesser included offense of voluntary manslaughter is mitigated malice. The judge closely followed the standard Instruction No. 4.25 by instructing that the elements of voluntary manslaughter while armed include:

> First, that the defendant inflicted an injury or injuries upon the deceased from which the deceased died, and;

> Secondly, that the killing was committed without legal justification or excuse, and;

the elements of an offense]"); *Davis, supra* note 11, 510 A.2d at 1053 ("trial judge must be especially alert not to send the jury back to resume deliberations having most recently heard supplemental instructions which are unbalanced").

The jury in the instant case was reinstructed on the offenses of procuring and assault. Although the trial judge did not also reinstruct at the time on self-defense, neither was he asked by defense counsel to do so. Although the court has identified the problem that arises from instructing the jury only on elements of an offense, *see Coreas, supra* note 11, 565 A.2d at 599; *Davis, supra* note 11, 510 A.2d at 1053 (special

Thirdly, that at the time the defendant was armed with or had readily available a deadly or dangerous weapon.

This instruction is deficient because it fails to specify that voluntary manslaughter is limited "to those homicides where the perpetrator's state of mind would constitute malice aforethought ... but for the presence of legally recognized mitigating circumstances," *Comber, supra* note 4, 584 A.2d at 47. However, because appellant never objected to the instruction, our review is limited to plain error, *Watts, supra,* 362 A.2d at 708, and we find none. Appellant was convicted of the greater offense of second-degree murder. Thus, even "[a]ssuming [there was] an erroneous instruction on the lesser-included offense [of voluntary manslaughter], there was no prejudice to [appellant] where he was convicted by the jury of the greater offense [of second-degree murder]." [12] *Mitchell v. United States,* 595 A.2d 1010, 1012 (D.C. 1991); *see also Hebble v. United States,* 257 A.2d 483, 485 (D.C.1969).

Accordingly, we affirm the judgment.

prominence of supplemental instructions (quoting from *Arroyo v. Jones,* 685 F.2d 35, 39 (2d Cir.), *cert. denied,* 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982))), appellant has not identified portions of the record to support his claim that the jury was of the view that self-defense was inapplicable to second degree murder, and he has not asserted on appeal that the judge erred in failing to instruct on self-defense after reinstructing on the assault charges.

**12.** The jury was instructed to consider the greater offense first, and only if it acquitted appellant of it, to consider the lesser offense.