972 F.2d 978
 Lorenzo BARNES, Plaintiff-Appellant,
v.
Gary J. PARKER, Individually and In his official capacity;
Dennis Dowd, Individually and In his official
capacity; Defendants,
Bonnie Henson, R.N., Individually and In her official
capacity; Kap Chung, M.D.; David Chapman, M.D.,
Defendants-Appellees.
 No. 91-1474.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 11, 1992.
Decided Aug. 14, 1992.
 
 Christine A. Gilsinan, St. Louis, Mo., for plaintiff-appellant.
 Thomas B. Borton, St. Louis, Mo., for defendants-appellees.
 Before McMILLIAN, HANSEN, and LOKEN, Circuit Judges.
 LOKEN, Circuit Judge.
 
 
 1
 Lorenzo Barnes, a prisoner at Missouri's Farmington Correctional Center (FCC), appeals the judgment dismissing his § 1983 action after a jury found that the doctors who treated Barnes's bad back did not act with deliberate indifference to his serious medical needs. Barnes argues that the district court[1] erred in denying his motion for new trial and in permitting defendants to use a peremptory challenge to strike a black juror. We affirm.
 
 
 2
 On July 29, 1988, Barnes fell during a work assignment and aggravated his arthritic back condition. Barnes saw a nurse the next day and received a prescription for pain medication. Eleven days later, Dr. Gary Parker examined Barnes, ordered an X-ray, prescribed Motrin and bed rest, and instructed him to walk with crutches. Dr. Kap Chung became Barnes's treating physician in September 1988, continued the treatment prescribed by Dr. Parker, and ordered a CAT scan.
 
 
 3
 On October 5, after reviewing the CAT scan results, Dr. Chung requested approval to send Barnes to a specialist. Because of delays in the approval process, it was December 20 before Barnes met with Dr. William Harris, an osteopathic specialist. Dr. Harris recommended continuing the treatment that Barnes had been receiving and also initiated a physical therapy program. On February 7, 1989, after Barnes had completed the program, Dr. Harris ordered another CAT scan and then performed an epidural block.
 
 
 4
 Six weeks later, Dr. Harris determined that the epidural block had not been successful. He prescribed a myelogram,[2] which was performed on April 12 and revealed some blockage in Barnes's lower back. As a result, on April 20, 1989, Dr. Harris requested that an MRI X-ray procedure be performed and referred Barnes to a neurosurgeon, Dr. Earl Gonyaw, for surgery evaluation. In early May, Dr. Gonyaw examined Barnes and his medical records, diagnosed Barnes's problem as a chronic arthritic back condition, concluded that Barnes did not need surgery, and prescribed an additional program of physical therapy.
 
 
 5
 On May 20, Barnes went to Boone Hospital for the MRI. Because of delays in obtaining the MRI films from the hospital, Dr. Gonyaw did not review them until January 1990. On February 2, 1990, Dr. Gonyaw examined Barnes, noted that he was beginning to show signs of neurological damage, and determined that surgery would prevent Barnes from developing greater problems in the future. On March 16, Dr. Gonyaw performed surgery, removing bone material which had built up in Barnes's vertebrae. The surgery was successful and relieved Barnes's back pain.
 
 
 6
 Barnes then commenced this action against three doctors, a nurse, and the prison administrator, alleging that various delays over the course of his treatment constituted cruel and unusual punishment. Barnes dismissed two defendants on the eve of trial, and the jury found for the remaining defendants. The district court denied Barnes's motion motion for new trial and this appeal followed.
 
 
 7
 Barnes first attacks the district court's denial of his motion for a new trial, arguing that the jury verdict was against the weight of the evidence. He argues that the delay between Dr. Chung's request for a specialist and the consultation with Dr. Harris, the delay in obtaining the MRI films for Dr. Gonyaw's review, and the time between Barnes's prison injury and his surgery prove that the defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment as interpreted in Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).
 
 
 8
 The denial of a new trial motion based on sufficiency of the evidence is "virtually unassailable on appeal." Grogg v. Missouri Pac. R.R., 841 F.2d 210, 214 (8th Cir.1988). After a thorough review of the record, we are persuaded that Barnes failed to make the strong showing of abuse of discretion that is required. See Warren v. Fanning, 950 F.2d 1370, 1374 (8th Cir.1991). Barnes received extensive and ultimately successful medical attention. The jury could reasonably have concluded that Barnes's complaint about the delay in recommending surgery was "mere disagreement with the course of his medical treatment," Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir.1990), and that the delays in processing the request for a specialist and in obtaining the MRI films either reflected negligence rather than deliberate indifference or had no impact on Barnes's course of treatment. Thus, the evidence at trial clearly supported the district court's decision to deny the motion for a new trial.
 
 
 9
 Barnes also challenges the defendants' peremptory strike of the only black person on the jury panel. See Edmonson v. Leesville Concrete Co., --- U.S. ----, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991); Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Before the trial began but after counsel had exercised their strikes, the following colloquy occurred outside the presence of the jury:
 
 
 10
 MR. STOKES [counsel for Barnes]: Your Honor, there was--my client is black. There was only one black member of the voir dire panel. Mr. Borton [counsel for defendants] has chosen to strike that particular member of the panel. I'd like for the record to know the basis for the strike.
 
 
 11
 THE COURT: Okay.
 
 
 12
 MR. BORTON: Your Honor, the basis for the strike is she indicated that she had back complaints and had trouble receiving medical care, and I think there was one other woman who was stricken for cause because of such complaints and that's the basis for the strike.
 
 
 13
 MR. STOKES: Okay. Thank you, Your Honor.
 
 
 14
 Barnes failed to properly preserve this issue for appeal. "His failure to follow up on his Batson objection could have been reasonably construed by the trial judge as an agreement that the expressed reasons were racially neutral." Hopson v. Fredericksen, 961 F.2d 1374, 1378 (8th Cir.1992). Since defense counsel articulated a legitimate nondiscriminatory reason for the peremptory strike in question, it is obvious that no plain error occurred.
 
 
 15
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The HONORABLE GEORGE F. GUNN, JR., United States District Judge for the Eastern District of Missouri
 
 
 [2]
 A myelogram is a procedure in which a patient's spinal cord is X-rayed after a radiopaque substance is injected into the area. See Stedman's Medical Dictionary 917 (5th ed.1982)