SAFEWAY STORES, INC., Appellant,

v.

Lisa BUCKMON, Appellee.

No. 93–CV–751.

District of Columbia Court of Appeals.

Argued June 1, 1994.
Decided Dec. 29, 1994.

Jacob J. Cecere, with whom Donald M. Gilberg and Gary A. Ulmer, Washington, DC, were on the brief, for appellant.

Robert A. DeBerardinis, Jr., Washington, DC, for appellee.

Before TERRY, STEADMAN and SCHWELB, Associate Judges.

Opinion for the court by Associate Judge STEADMAN.

Dissenting opinion by Associate Judge TERRY at p. 607.

STEADMAN, Associate Judge:

Appellee, Mrs. Lisa Buckmon, recovered a judgment of $75,000 against appellant, Safeway Stores, Inc. ("Safeway"), for back injuries she sustained when a candy rack fell on her as she waited in line at one of Safeway's stores. Safeway raises four issues on appeal. First, Safeway alleges that Mrs. Buckmon used peremptory strikes to remove potential jurors on the basis of race and that the court erred in not ordering a mistrial on this ground. Second, Safeway contends that the trial court improperly denied Safeway's motion for a mistrial after the jury heard testimony that Mrs. Buckmon had no medical insurance. Third, Safeway argues that the trial court erred in allowing the jury to hear testimony from Mrs. Buckmon's treating physician. Dr. Quraishi, regarding the cause of Mrs. Buckmon's pain and the possibility of future pain, because those findings were developed solely for purposes of litigation, and as such required inclusion in a statement under Super.Ct.Civ.R. 26(b)(4). Fourth, Safeway contends that the verdict should have been remitted or a new trial granted because the jury verdict was excessive and based upon improper factors. We disagree with each argument and accordingly affirm the judgment.

## I.

Mrs. Buckmon and her sister-in-law were shopping at a Safeway store on December 29, 1990. A store employee was moving boxes in the store when the equipment he was using hit the candy rack next to the counter where Mrs. Buckmon was standing in the checkout line. The rack fell and pinned Mrs. Buckmon against the counter. Mrs. Buckmon reported the incident to the individual in the store office before leaving. On August 29, 1991, Mrs. Buckmon filed suit against Safeway, alleging physical injuries resulting from Safeway's negligence.

On March 8, 1993, voir dire was conducted and a jury of eight, two of whom would be alternates, was seated. At three times, both before and after the chosen jury was sworn, the judge asked whether counsel were satisfied and whether they had any concerns. No

racial bias concerns were raised. On March 9, 1993, both counsel were present at the *de bene esse* video deposition of Mrs. Buckmon's treating physician, Dr. Quraishi. On March 10, 1993, before any evidence was presented, Safeway's counsel "raised the issue" that Mrs. Buckmon's three peremptory strikes were racially based because all three of the potential jurors were white. Safeway did not move for a mistrial. Safeway's counsel represented to the court that the jury consisted of six blacks and two whites, one of the whites being an alternate juror.

The judge began by asking Mrs. Buckmon's counsel to justify the strikes on the record. Mrs. Buckmon's counsel suggested that Safeway was hoping to get "a free trial" by raising the racial bias issue, waiting for the outcome of the trial, and then appealing if the verdict went against Safeway. Mrs. Buckmon's counsel then conceded error, saying that he did not believe the basis for his first peremptory strike, namely, the potential juror's appearance, would suffice on appeal. He explained:

> And, it wasn't because they were white looks, because I just don't like his looks, I just didn't like his looks. And, that's not going to stand up with the Court of Appeals. So, I would suggest, I'm conceding error, I suggest we throw out those jurors and bring in a whole new panel and start over again. If [Safeway's counsel] feels like Safeway's been prejudiced, because they don't have whites, they don't have enough whites on that jury, that's fine. Let's start all over again. But, let's not have a free trial here and see how it works out for Safeway.

The judge opined that if the strikes were based on "a person's demeanor, manner, how they walk, or that they're unemployed, are they responsible, those are valid reasons counsel can still exercise peremptory challenges," but Mrs. Buckmon's counsel disagreed. The judge saw no racial bias behind the first peremptory strike after counsel's explanation and asked counsel to give reasons for the other two strikes. Counsel again resisted the inquiry, protesting that his client was "not here to serve as a test case for how we should strike jurors. Like—I'd just like to start fresh, pick a whole new jury, and we can try this." The judge noted that a new jury might very well present the same problem so counsel should provide plausible justifications for the other two strikes.

Instead of responding, Mrs. Buckmon's counsel inquired whether Safeway wanted a new panel, suggesting that if it did not, the question was moot. Although the court did not think Safeway would make the motion unless it sought a new jury panel, Mrs. Buckmon's counsel was uncertain. Safeway's counsel said that he had made a prima facie showing of discrimination and it was proper for the court to inquire as to the basis for the strikes, but not necessary for the court to concede error and bring in a new panel. The court then agreed with Mrs. Buckmon's counsel that Safeway's counsel was "trying to have it both ways, and preserve the issue for appeal, too."

At that point, the following discussion took place:

> THE COURT: ... I'm satisfied with [the justification for peremptory strike] Number One, that it was based on his demeanor, manner, and his deportment, and not based on his race. Now, what about the other two?
>
> [MRS. BUCKMON'S COUNSEL]: Well, Your Honor, I'm going to cut this whole discussion short, for the reasons I'm articulating. I am not going to have Safeway have it both ways, try the case, be happy, not tell the judge, not tell the Court they're unhappy with the jury, and then go through trial and then raise it on [sic] the Court of Appeals. I struck all three of those people because they were white.
>
> THE COURT: So, rather than run the risk of appellate error, you want me to disband this jury?
>
> [MRS. BUCKMON'S COUNSEL]: Yes, Your Honor. I and [sic] concede error.
>
> THE COURT: All right.

Safeway's counsel then asked for costs because Mrs. Buckmon had struck the jurors for racial reasons in deliberate disregard of known law. The court also noted that it might be necessary to refer Mrs. Buckmon's counsel to Bar Counsel because of his admis-

sion of racial bias. Mrs. Buckmon's counsel objected, saying that he was in a difficult position because "Safeway hasn't even asked—hasn't even suggested that they're dissatisfied with the jury panel. So, why is it an issue?" The court then asked for "justification, which is candid, and not just trying to avoid an appeal issue[ ]." If Mrs. Buckmon's counsel could give valid race-neutral reasons for the other strikes, the record would be protected, and the case could continue. Mrs. Buckmon's counsel noted that he had created a "horrific record" by saying that he struck the three potential jurors because they were white. The judge agreed and said that he was uncertain whether the concession was an overreaction or a rebellion against being placed in a difficult situation by Safeway's counsel. Mrs. Buckmon's counsel claimed:

[my] response to the Court that the strikes were racially motivated only, was an attempt on my part, to have the—to have the Court call a new panel, and start all over again, simply so we wouldn't have this issue before the Court of Appeals, and I apologize to the Court for making that statement, because it really does not reflect—I have no racial animosity towards white people, and do not strike them from the jury panel because—

The court stated that Mrs. Buckmon's counsel was white, and the court had known him for five or ten years and had never seen any inclination of racial bias.

Mrs. Buckmon's counsel then apologized again for his improper attempt to avoid the racial issue and proceeded to give his reasons for the three peremptory strikes. Counsel stated that past experience had made him reluctant to seat people with whom he had not spoken during voir dire. In addition, the potential juror in this case appeared to have a casual attitude toward the proceedings, was young, was unemployed, and might not have been responsible enough about his duties as a juror. The second juror was struck because, as a professional investigator, he might be especially critical of the evidence. Although Mrs. Buckmon's counsel did not have his voir dire notes and initially had no independent recollection of the third potential juror, after being told of her age, employment and address, counsel noted that she had seemed uncomfortable and unhappy in the jury box, and not having heard from her, he was reluctant to seat her on the jury.

Having given his explanations, Mrs. Buckmon's counsel again asked whether Safeway was unhappy with the jury and wanted a new panel. Safeway's counsel responded:

Your Honor, that's not Safeway's burden. Safeway had the right, when a prima facie showing is made, to simply raise the issue.... It is not our duty, once a prima facie showing is made to say one way or the other. This is a matter for the Court to decide.

The court then ruled:

The Court is satisfied that the jury has been fairly and impartially selected, and the Court saw no basis for concluding that race or gender had anything to do with it, and counsel is exercising his best judgment, based on intangible factors that are proffered ... I don't see even an inkling of a case that there was any racial bias for the selection of the jury, so the motion is denied at this point, as to defense position. I think, if this case went to the Court of Appeals, I think it's not even a close question.

Safeway's counsel made no further comment on the ruling.

The case proceeded to trial. During Mrs. Buckmon's case-in-chief, her sister-in-law testified that she had advised Mrs. Buckmon to report the incident to the store office because Mrs. Buckmon had no medical insurance. Safeway objected, was allowed to approach the bench, and immediately moved for a mistrial, claiming that this evidence unfairly prejudiced the defendant and inspired sympathy for the plaintiff. The jury was recessed and the court distinguished the testimony in this case from the usual situation where the defendant's insurance is mentioned, indicating a deep pocket. Safeway argued that because the collateral source rule prevented counsel from asking whether Mrs. Buckmon's bills had been paid by insurance, so it should prevent Mrs. Buckmon from offering that the bills had not yet been paid. The court denied the motion for a mistrial because the testimony was no more

prejudicial than the standard assumption that a plaintiff has insurance and a curative instruction would suffice to correct any prejudice. The trial court immediately instructed the jury that whether the plaintiff had health insurance "should influence you in no way, one way or the other on the question of what amount of damages she's entitled to recover, if you find that the evidence justifies any recovery in her behalf."

The jury returned a verdict for Mrs. Buckmon for $75,000. Safeway filed a motion seeking, in the alternative, a judgment notwithstanding the verdict, a new trial, or remittitur, which the trial court denied. A notice of appeal followed.

## II.

■ Safeway's central contention on appeal is that the trial court erred in not declaring a mistrial on the basis of the allegedly race-based use of peremptory strikes by counsel for Mrs. Buckmon.[1] The rule is clearly established that peremptory strikes may not be used on the basis of race in either criminal, *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986) (prosecutor's strikes); *Georgia v. McCollum*, 505 U.S. ——, ——, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33 (1992) (criminal defendant's strikes), or civil litigation, *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 631, 111 S.Ct. 2077, 2088, 114 L.Ed.2d 660 (1991). Once a party has made a prima facie showing that the opposing party has exercised peremptory challenges on the basis of race, the burden shifts to the opposing party to provide race-neutral explanations for the strikes. *Hernandez v. New York*, 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991). Then the trial court determines whether the complaining party has proven intentional discrimination. *Id.* at 359, 111 S.Ct. at 1866.

■ Here, the trial court did not explicitly follow these steps. Instead, once Safeway suggested discrimination, the judge asked Mrs. Buckmon for race-neutral reasons without first making a finding that Safeway had presented a prima facie case. However, "[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." *Id.* (quoting *United States Postal Serv. Bd. of Govs. v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)). Thus, once Mrs. Buckmon gave race-neutral reasons for the strikes and the trial court ruled on the intentional discrimination issue, the preliminary question of a prima facie case became moot.

■ Once a race-neutral basis for the strikes is offered, the trial court has the duty to determine if the complaining party has established intentional discrimination. *Hernandez, supra*, 500 U.S. at 363, 111 S.Ct. at 1868. Here, counsel presented race-neutral reasons for striking one potential juror and then claimed instead to have stricken all three persons on the basis of race. At that point, the judge was presented with a dilemma: Mrs. Buckmon's counsel had articulated contradictory reasons—one race-based and one not—for striking the first juror, and in the judge's view, the "admission" of racial discrimination was not candid, but merely an attempt to avoid creating an issue for appeal. An assertion of racial discrimination in the exercise of peremptory strikes is "very serious and demands the closest possible scrutiny." *Tursio v. United States*, 634 A.2d 1205, 1211 (D.C.1993) (quoting *Jefferson v. United*

---

1. Mrs. Buckmon argues on appeal that Safeway's objection to the jury selection process was not timely because it was not raised before the jury was sworn. Although that question has been expressly left open in this jurisdiction, *Tursio v. United States*, 634 A.2d 1205, 1209–10 n. 5 (D.C. 1993), a trial court ruling of untimeliness would seem appropriate in light of the difficulties presented in a delayed consideration of a *Batson* challenge. *See, e.g., Ford v. Georgia*, 498 U.S. 411, 422, 111 S.Ct. 850, 856, 112 L.Ed.2d 935 (1991) (requirement that a *Batson* claim be raised between the time when the jury is selected and sworn would be a sensible rule); *Hill v. State*, 259 Ga. 557, 385 S.E.2d 404, 405 (1989) (*Batson* claim must be raised before jury is sworn); *People v. Evans*, 125 Ill.2d 50, 125 Ill. Dec. 790, 794, 530 N.E.2d 1360, 1364 (1988) (same), *cert. denied*, 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989). However, no timeliness argument was made to the trial court, and we need not consider the issue further on this appeal, given our disposition of Safeway's substantive argument.

*States,* 631 A.2d 13, 15 (D.C.1993)). Indubitably an apparent admission of discriminatory purpose potentially threatens the fairness and neutrality of the jury selection process and our system of justice as a whole, *see Batson, supra,* 476 U.S. at 87, 106 S.Ct. at 1718, and precisely because of the seriousness of that concern, we believe the trial judge quite properly could feel obligated here to resolve that conflict by further inquiring into the basis for the strikes. To otherwise mandate on a *per se* basis would allow a party to "concede" racial bias in order to achieve, in essence, a jury-wide peremptory strike, forcing the judge to grant a mistrial, creating the false appearance of a racially biased system and undermining the community's perception of the fairness of court proceedings.

 Moreover, in the proceedings here, Safeway never requested a mistrial, indeed, it affirmatively refused to do so when asked and did not object to the court's ruling that the strikes were not race-based. Although the rights of the excluded jurors not to be denied participation in jury service on account of their race, *Batson, supra,* 476 U.S. at 87, 106 S.Ct. at 1718, may be asserted by the parties involved in the case, *Edmonson, supra,* 500 U.S. at 630, 111 S.Ct. at 2088, a *Batson* claim may be waived if not raised in a timely manner, or properly preserved for appeal. *Hopson v. Fredericksen,* 961 F.2d 1374, 1377–78 (8th Cir.1992) (issue not preserved for appeal where objecting counsel did not attempt to rebut reasons advanced for strikes or to object to continuing with same jury, so trial court could construe "failure to follow up" as agreement with ruling); *Clark v. Newport News Shipbuilding & Dry Dock Co.,* 937 F.2d 934, 939 (4th Cir.1991) (*Batson* objection may be waived if not timely raised and "[n]either *Batson* nor its progeny suggests that it is the duty of the court to act *sua sponte* to prevent discriminatory exclusion of jurors"); *see Ford v. Georgia,* 498 U.S. 411, 423, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991) (explaining that *Batson* allowed local courts to establish procedures to determine when an objection must be made to be timely). On this record, Safeway did not preserve the *Batson* objection itself, much less the issues it now raises for the first time:

that the admission of discriminatory purpose required an immediate mistrial, that the race-neutral reasons given were insufficient, and that some of the race-neutral reasons for the strikes also applied to black jurors, presenting a concern of dissimilar treatment. *See B.J.P. v. R.W.P.,* 637 A.2d 74, 79 (D.C. 1994) (argument may not be kept in litigant's "hip pocket, to be produced only in the event that [the litigant] loses"); *Hopkins v. United States,* 595 A.2d 995, 996 n. 3 (D.C.1991) (quoting *Palmer Constr. Co. v. Patouillet,* 42 A.2d 273, 274 (D.C.1945) ("One cannot take his chance on a favorable verdict, reserving a right to impeach it if it happens to go the other way")).

 Having determined that Safeway did not preserve the *Batson* issue for appeal, at best "the question thus becomes whether the trial court committed plain error." *United States v. Chandler,* 12 F.3d 1427, 1432 (7th Cir.1994); *see Hopson, supra,* 961 F.2d at 1378 (plain error review in civil rights case). On this record, we perceive no error at all, much less plain error, in refusing to grant a mistrial. As explained above, the trial court acted properly in continuing to investigate the real reasons for the strikes after counsel's apparent admission of racial bias. Further, we must accord great deference to the trial court's findings of fact on appeal, especially in this context where the finding largely revolves around concerns of credibility and demeanor. *Hernandez, supra,* 500 U.S. at 365, 111 S.Ct. at 1869; *see Little v. United States,* 613 A.2d 880, 885 (D.C.1992). The federal appellate courts set aside factual findings regarding discriminatory intent in civil cases only if the findings are clearly erroneous. *Hernandez, supra,* 500 U.S. at 364, 111 S.Ct. at 1869 (citing *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). The factfinder's choice between two permissible views of the evidence cannot be clearly erroneous. *Id.* at 369, 111 S.Ct. at 1871–1872 (quoting *Anderson, supra,* 470 U.S. at 574, 105 S.Ct. at 1511). Here, one permissible view of the evidence is that Mrs. Buckmon's counsel intentionally discriminated and the offered race-neutral reasons were pretextual. Another equally permissi-

ble view of the evidence is that Mrs. Buckmon's counsel was frustrated with the difficult position in which Safeway's refusal to request a mistrial and a new jury placed him, and he unwisely conceded error in an attempt to resolve the issue before the trial proceedings began. The trial court chose the latter of these permissible interpretations, clearly stating that it found no racial reason for the strikes.

When examining the reasons presented for a peremptory strike, "[u]nless a discriminatory intent is inherent in the ... explanation, the reason offered will be deemed race neutral." *Chandler, supra*, 12 F.3d at 1432 (quoting *Hernandez, supra*, 500 U.S. at 360, 111 S.Ct. at 1866.) Here, the trial court based his finding on the race-neutral reasons offered by Mrs. Buckmon's counsel, which have been accepted in other jurisdictions, such as the legal nature of one's employment, *United States v. Miller*, 939 F.2d 605 (8th Cir.1991) (secretary's exposure to legal field), one's demeanor indicating that she did not wish to be a juror, *United States v. Ruiz*, 894 F.2d 501 (2d Cir.1990) (facial expressions suggesting person did not want to be present), and one's youthfulness and unemployment, *United States v. Ferguson*, 935 F.2d 862 (7th Cir.1991) (youth and unemployment may be acceptable justifications), *cert. denied*, 502 U.S. 1045, 112 S.Ct. 907, 116 L.Ed.2d 807 (1992).[2] The fact that not all of the stricken jurors spoke during voir dire need not be used to infer racially based strikes. *United States v. Gordon*, 974 F.2d 97, 100 (8th Cir.1992). The trial court was uniquely positioned to evaluate the attorney's demeanor and the tone of the statements, both critical to an evaluation of the facts in the circumstances here. The reasons given are not inherently discriminatory. In sum, we see no basis to conclude that the trial court committed reversible error in not granting a mistrial *sua sponte*.[3] *Barnes v. Parker*, 972 F.2d 978, 980 (8th Cir.1992) (no plain error where legitimate nondiscriminatory reason for strike).

### III.

We also find no merit in Safeway's three remaining asserted grounds for reversal.

### A.

Safeway argues that the trial court improperly denied the motion for a mistrial after the jury heard testimony that Mrs. Buckmon had no medical insurance. This court has previously held that "the mere mention of insurance in a negligence case ought not ipso facto require a mistrial. Much must be left to the discretion of the trial judge." *Parks v. Ratcliff*, 240 A.2d 659, 661 (D.C.1968). If the trial court allows the parties to mention insurance, the court, at the request of opposing counsel, shall "instruct the jurors that the question of either party's insurance, or lack of insurance, has no bearing on the issues to be tried." *Id.* at 661. Indeed, "as a general rule the admission of voluntary, unresponsive statements of this kind is not regarded as reversible error, even when made by the plaintiff or his witnesses, if the court takes prompt action to eradicate such statements." 18A COUCH ON INSURANCE § 78:55 (Rev. ed. 1983). Thus, "although the plaintiff's attorney may not seek to bring the fact of insurance before the jury by introduction of inadmissible evidence, it has been held in many, but not all, jurisdictions, that if the trial court promptly stops such a line of inquiry, or such statements, upon objection by the defendant, and instructs the jury not to regard them or to permit the matter of insurance to influence their verdict in any way, the prejudicial ef-

---

2. Although the court noted the attorney's lack of personal bias, this was only mentioned in passing and was not the reason for the finding of no racial bias. The past history of the attorney should not be considered. *Tursio, supra*, 634 A.2d at 1211. Nor was the finding based on the presence of whites on the sworn jury.

3. Safeway's flat assertion for the first time on appeal that "characteristics identified by Plaintiff's counsel in the struck Caucasian jurors were also present in African–American panel members who were not struck" does not present us with sufficient detail or record-support for consideration of this argument. *See Cobb v. Standard Drug Co.*, 453 A.2d 110, 111–12 (D.C.1982) (appellant responsible for presenting record on appeal); *Jefferson v. United States*, 631 A.2d 13, 15–16 (D.C.1993) (appellant did not establish racial makeup of venire or jury).

fect is removed." *Id.* at § 78:36. Hence, the mere mention of insurance does not always require a mistrial if the jury is properly instructed.[4] Here, the jury received immediate instruction to disregard testimony bearing on insurance when considering any award to be granted.[5]

▪ Safeway argued that because it was impermissible to ask whether plaintiff's bills had been paid by insurance, it should also be impermissible for plaintiff to say that the bills would not be paid by insurance, thus playing on the jury's sympathy. The trial court suggested that the mention of plaintiff's lack of health insurance here was different from the usual case where a mention of insurance shows that if the plaintiff is granted recovery, the defendant's insurance will pay rather than defendant directly. The generally accepted reasons for excluding evidence of insurance are twofold. First, evidence that the defendant is insured is not evidence of negligence or a negligent propensity on the part of the defendant. 18A COUCH ON INSURANCE § 78:30. This reasoning is inapplicable in this case where plaintiff's lack of medical insurance is at issue. Second, it is prejudicial "in that it points out that an insurance company is the real defendant, and that whatever verdict may be rendered will not be borne by the nominal defendant." *Id.* Safeway's argument is essentially that evidence that a plaintiff has no medical insurance is as prejudicial as evidence that a defendant has liability insurance. We disagree. While prejudice is possible, the impact is much less in a case such as this because even if a plaintiff has medical insurance, it would not necessarily cover all of plaintiff's costs, nor would it pay for past, present or future pain and suffering and such damages which are often at issue in negligence cases.

Furthermore, the trial court also commented that juries "are a lot more sophisticated" and less easily prejudiced than they are usually perceived to be. Eventually, the court ruled:

> At this point, the Court will deny the motion for mistrial and proceed. The fact of insurance being mentioned in the context here, the Court does not see any more prejudicial than the standard assumption that a person who is suing a plaintiff, attempting to recover for his medical bills, or her medical bills, has or does not have insurance, and I think a curative instruction would be sufficient at this point.

The trial court's order states:

> Here, the reference to not having health insurance had no greater impact than in the normal case where a plaintiff puts into evidence his or her medical bills with the expectation that a jury will consider, and include them in the aggregate sum, in determining what total award it will make to the plaintiff, if it finds the defendant negligent and thus liable in the case.

Hence, the trial court found, "the reference was totally innocuous" and "had absolutely no influence on the verdict here." The trial court remarked that based on the opening statement by Mrs. Buckmon's counsel, the witness was expected to give "a completely different answer." In light of the facts that the matter of insurance was mentioned only once, that it was "a complete shock" to Mrs. Buckmon's counsel, and that the insurance at issue was plaintiff's health insurance, not defendant's liability insurance, we find no abuse of discretion on the part of the trial court in giving a corrective instruction rather than granting a mistrial.

**B.**

▪ Safeway contends that the testimony of Mrs. Buckmon's treating physician, Dr. Quraishi, on the cause of Mrs. Buckmon's pain and the possibility of future pain, was developed solely for purposes of litigation, and as such required inclusion in a statement under Super.Ct.Civ.R. 26(b)(4). "[Rule]

---

4. In fact, even one early case allowed the judge to give a corrective instruction after a single inadvertent mention of the defendant's insurance in an automobile liability case, "[i]n view of the extent of plaintiff's injuries, the small amount of the verdict, as well as the other circumstances in this case." *Knuckles v. Weathersby,* 63 App.D.C. 276, 277, 72 F.2d 69, 70 (1934) (per curiam).

5. Juries are presumed to follow their instructions unless otherwise shown. *Swanson v. United States,* 602 A.2d 1102, 1107 (D.C.1992).

26(b)(4) regulates discovery of facts known to and opinions held by an adversary's expert," *Adkins v. Morton,* 494 A.2d 652, 656 (D.C. 1985), if "acquired or developed in anticipation of litigation or for trial." Super.Ct.Civ.R. 26(b)(4). However, if a physician obtains and develops the bases of that testimony in the course of treating the patient, the doctor is properly considered to be an ordinary witness rather than an expert covered by the requirements of Rule 26(b)(4). *Adkins, supra,* 494 A.2d at 657.

Safeway essentially asserts on appeal that the substance of Dr. Quraishi's trial testimony was never produced during discovery or in the pretrial statement; therefore, it must have been developed specifically for purposes of litigation. To the contrary, the trial court noted that Dr. Quraishi's treatment report of August 15, 1991, provided during discovery, stated that Mrs. Buckmon had "lumbosacral strain, superimposed on disc disease at L3–4, L4–5" and that the February 9, 1993, treatment report, also provided during discovery, noted a recurrence of lumbosacral strain. When Safeway's counsel argued to the trial court that a Rule 26(b)(4) statement should be required for treating physicians if they had not previously rendered a statement on causation of the injury,[6] the judge responded:

> Counsel should be sufficiently perceptive enough to realize that a treating physician has got to have some opinion; otherwise, he can't treat the person. And, you get the deposition, and ask that. There's no obligation on the part of the plaintiff to file a Rule 26–B statement, stating the obvious.

The court's order states, "seasoned counsel reasonably could have anticipated the testimony which unfolded in this case" and could not claim surprise. These findings imply, and we find no fault in the trial court's conclusion, that Rule 26(b)(4) does not apply here because Dr. Quraishi's opinions were

developed during the course of Mrs. Buckmon's treatment as indicated in the reports, not solely for litigation purposes. Further, Safeway was not deprived of the right to informative cross-examination because, as the trial court found, the treatment records should have alerted counsel to the need for pretrial deposition of the doctor.[7] Hence, Safeway cannot now claim surprise, and Dr. Quraishi was properly listed as an ordinary witness in this case. The trial court did not err in permitting Dr. Quraishi's trial testimony.

## C.

■■■■ Finally, Safeway contends that the verdict should have been remitted or a new trial granted because the jury verdict was based upon passion, prejudice and other improper factors. In considering such a motion, the trial court asks whether the verdict is "beyond all reason," "so great as to shock the conscience," *International Sec. Corp. v. McQueen,* 497 A.2d 1076, 1081 (D.C.1985) (internal quotations omitted), or "so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate," or "whether the award indicates prejudice, passion or partiality or was based on oversight, mistake or consideration of an improper element." *Weinberg v. Johnson,* 518 A.2d 985, 994 (D.C.1986).

■■■ This court will not reverse the trial court's denial of a motion for a new trial or remittitur unless the trial court has abused its discretion. *District of Columbia Transit System, Inc. v. Freeman,* 333 A.2d 61, 61 (D.C.1975); *see also Otis Elevator Co. v. Tuerr,* 616 A.2d 1254, 1261 (D.C.1992) (new trial motion). The trial court heard and considered all the evidence, and was in the best position to evaluate the propriety of the verdict. The size of the verdict here is not

---

**6.** Neither party called *Adkins* to the trial court's attention.

**7.** Safeway claims that "a lack of any mention of a permanent or chronic condition in Dr. Quraishi's medical records" should be interpreted as a disavowal during discovery that such testimony would be elicited. *See Adkins, supra,* 494 A.2d at 660 (barring experts, including actors or viewers, from testifying about certain matters which were disavowed during discovery, but not elaborating on what would constitute such a disavowal). However, the treatment records provided during discovery indicated the underlying basis for Dr. Quraishi's opinions as expressed at trial. We perceive no disavowal here.

excessive under the criteria to be applied by the trial court. *See, e.g., Capitol Hill Hosp. v. Jones,* 532 A.2d 89, 92–93 (D.C.1987). Mrs. Buckmon testified that the injury caused her daily, continual pain in her neck, back, and legs and limited her ability to feed and care for her two children and do housework. Initially after the incident she had trouble walking and could not drive. Mrs. Buckmon presented documented medical expenses and expert testimony on the nature and cause of her injury. We find sufficient support in the record to find no abuse of discretion in the trial court's denial of Safeway's motion.[8]

*Affirmed.*

TERRY, Associate Judge, dissenting:

Although I have no quarrel with part III of the majority opinion, I cannot join in part II, in which my colleagues reject Safeway's argument based on *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny. In my view, the entire trial was irreparably tainted by the admission of Mrs. Buckmon's counsel that he struck three potential jurors "because they were white." In these circumstances the trial judge had absolutely no choice but to declare a mistrial,[1] summon a new venire, and begin the jury selection process anew. The fairness of the trial was utterly compromised from that moment on, and no explanation, no rationalizing, no backtracking on the part of counsel could repair the damage. As the Supreme Court once said in another context, "He can never get the cat back in the bag." *United States v. Bayer,* 331 U.S. 532, 540, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654 (1947).

A claim that an attorney is engaging in improper discrimination in the exercise of peremptory challenges, in violation of *Batson,* "is very serious and demands the closest possible scrutiny by both the trial court and this court." *Jefferson v. United States,* 631

A.2d 13, 15 (D.C.1993); *accord, e.g., Tursio v. United States,* 634 A.2d 1205, 1211 .(D.C. 1993). When counsel blatantly admits on the record that he has done what *Batson* forbids, as counsel did in this case ("I struck all three of those people *because they were white*"), the court simply cannot close its eyes to that admitted violation. Nor can the court evade its duty by trying to pass the buck to counsel for the opposing party, as the trial judge did here. After Mrs. Buckmon's attorney made his shocking admission that he had deliberately engaged in improper conduct, the judge turned to Safeway's counsel and asked whether he wanted a new, untainted jury panel. Safeway's counsel quite properly replied, "Your Honor, that's not Safeway's burden." I agree totally with counsel's comment that, once the issue of unlawful discrimination in jury selection was raised, its resolution was "a matter for the court to decide." The court's decision did not, and could not, depend on the wishes or preferences of Safeway's counsel.

My colleagues make much of the fact that Safeway's counsel never requested a mistrial and, indeed, "refused to do so when asked." *Ante* at 603. To me, this is beside the point. The failure of Safeway's counsel to do what he probably should have done did not relieve the court of its own independent duty to act, and act decisively. I would hold that the court's failure to dismiss the jury and summon a new venire was plain error requiring reversal of the judgment, regardless of what counsel did or did not do. *Batson* is but one in a steady stream of cases from the Supreme Court, dating back more than a century,[2] which teach us that racial discrimination in jury selection is utterly intolerable and must be fought with every weapon at the courts' disposal. Excluding white persons from a jury "because they [are] white," as counsel admittedly did here, is no different, in kind or in degree, from excluding black persons because they are black—and *Batson*

---

8. We do not agree with Safeway's suggestion the court's denial of Safeway's post-trial motion was inconsistent with the factual record and thus an abuse of discretion. The trial court properly determined that the jury verdict was within the maximum limit of a reasonable range based on the full evidentiary record.

1. The jury had been sworn by the time the *Batson* issue was raised, but no testimony had been taken.

2. *See, e.g., Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1880).

prohibits both.[3] Once Mrs. Buckmon's attorney conceded on the record that he had polluted the judicial waters, there simply were no "race-neutral" reasons that could have dispelled or diminished the pollution. Counsel's statement was like the proverbial skunk thrown into the jury box; the skunk can be removed from the courtroom, but the tainted jury remains. The only possible remedy in this case was a new jury, drawn from a new venire.

As I view this case, Safeway was deprived of its right to a fair trial. Since my colleagues have a different opinion, I respectfully dissent.

---

3. That *Batson* leaves no room for the sort of conduct that counsel admitted in this case is illustrated by our decision in *Tursio v. United States, supra*. In that case a Hispanic defendant was charged with the murder of a black man. The prosecutor used nine of his ten peremptory challenges to eliminate all the whites from the regular jury, leaving an all-black jury with only one white alternate. The trial judge concluded after a hearing that the prosecutor's challenges were not motivated by a discriminatory purpose. We reversed, holding *inter alia* that the trial judge had erred in accepting the prosecutor's explanations, which we found legally insufficient to overcome the defendant's *prima facie* showing of discrimination. *See* 634 A.2d at 1211–1213.